And our last case for argument this morning is Carol Leskowyak v. Kilolo Kijakazi. Come back again, Your Honor. I'd like to start out with a couple of things of clarification. In the record, at one point, the term light duty was used. Light duty is not a Social Security term. It's a work comp term, and it just means a lesser duty or a modified duty from what was before. In the Social Security world, by regulation, light duty involves 10-pound lifting frequently, 20-pound lifting occasionally, sit and walk up to 6 hours out of an 8-hour day, and sitting 2 hours out of an 8-hour day. And one way to conceptualize light work is if you were to walk a leisurely, ultra-leisurely pace of 1 mile an hour, you'd cover 6 miles a day maximum in light work. If you were to walk a slow 2 miles an hour, that's 12 miles a day. Five days a week, 12 miles a day, that's how much walking is involved in light work. I thought the scope of this appeal was limited to whether the ALJ appropriately analyzed the evidence of her back condition after the date of last insured, and that was especially conceded in the reply brief. It is, and I'm just giving context because the RFC that the ALJ ended up at was light. But I only had one more thing to say, and then I'll just move on if that's okay, Your Honor. 10 pounds, and during those walks, you're carrying a 10-pound bowling ball, two-thirds of the time, and a 20-pound something the rest of the time. That's what light work is. That's what this judge alternatively imagined that my client could do. Mr. Forbes, focusing on the record here, can I ask you a question? Sure. On November 23rd of 2018, your client is diagnosed with what's referred to as post-laminectomy syndrome. Yes. Okay, and you make the argument, because I think it's in the same location of her spine, you make the point that this is what connects us back to the 2011 back surgery and the back she was having around that time, and that they basically continued, and then they flared up in a meaningful way in 2018. That's the argument you make. That's correct. Where is the medical evidence backing the argument? In other words, where would you point me in the record to understand as a medical matter, as opposed to an argument made by counsel and an appellate brief, that as a medical matter, the diagnosis of post-laminectomy syndrome. August 16th, 2016, Administrative Record 575, I believe, is when the family doctor assesses chronic midline low back pain without sciatica, and then there's an orthopedic referral. I believe there's actually two references to that. For some reason, I only wrote down. I have the record right in front of me. From Parkview. Yes. Okay, I got it. Here's why midline back pain is where the instrumentation is. The testimony is that the sciatica flares when she overdoes it, so the sciatica is kind of a waxing and waning, which this court has acknowledged happens, an old case in the mid-teens. I didn't cite it, but it's Thomas. Can I ask the question a different way? Sure. Okay, in these proceedings, is there anything that would prohibit the applicant, so here Carol L., from submitting evidence that explains the medical terminology, and as an evidentiary matter, allows points to be connected? Because when you say chronic midline low back pain without sciatica, well, I'm not trained to know what it means. I don't know. I could Google it. I could go look in a medical. I don't know what it means, though. What the, I mean, from a litigation standpoint in an administration. Don't you have an ability to present evidence to connect all this? Evidence can be presented, but this is not a personal injury trial. The claimants can't afford thousands of dollars on medical experts. About all we have is to refer you to the basic medical text, like Merck Manual Professional, or as in, say, the last argument we had where there was a doctor that went above and beyond to write extra notes. If I had an unlimited budget on each case, I could connect all dots, but the... But what concerns me is that I don't know, under the standard of review that we're operating, that I don't know what evidence we point to to say that the post-laminectomy syndrome at L4, L5 proved the connection to the prior period. It does in the sense that the doctor's post-DLI references. The question is, what functional limitations did she have during the trajectory of that period? And that's why you'll see that the testimony focused primarily on 2017, which is the year before the DLI. And so basically, we have the connection post, the second surgery to the first surgery. We have the thing that happened in 2016. We have some anti-inflammatories that were used. And we have her testimony. I don't know if 2016 connects it to the prior period. That's your argument. What I'm trying to focus on is, where is the evidence that connects it, other than your say-so at the podium? Well, the evidence is the identification of the chronic midline pain. Well, I don't know what that means. How do I know? How are we supposed to know what that means without evidence? Didn't they say chronic midline low back pain? Is the word low in there?  But that could mean that she's... That's the lumbar spine. That's... I mean, that's... I understand your frustration. I practically have had to learn how to become a doctor in the last 30 years of doing this. But that's pretty much what we got there. And then... But I do understand. I mean, I wish there were more here, too, Your Honor. I'm not going to... I do not mean to minimize your concern. Let me just pause a second. Why don't I reserve the rest of my time and... That's fine. Thank you. Thank you. Ms. Hahn. Good afternoon. Good afternoon. May it please the Court. Lou Hahn on behalf of the Commissioner of Social Security. I'll begin by paraphrasing Mr. Forbes' statement that evidence could have been presented. Certainly could have. And to answer Judge Scudder's questions, it wasn't. At the hearing, which is a non-adversarial hearing, not a personal injury trial, ALJs often, and the ALJ in this case did, ask Ms. Leskowiak and her attorney if the record was complete. A claimant's attorney can ask to submit evidence after a hearing. Here, Ms. Leskowiak, as often is the case, also requested review by the Appeals Council of the Social Security Administration, and at that time, had the opportunity to attach any other medical evidence to that request for review. And she didn't. So there's a, in your experience, there's an opportunity that an applicant has to work their way through the medical records and to say the diagnosis in November of 18 of the post-laminectomy syndrome is absolutely connected back to the surgery that was done in 11. They have that opportunity to present that evidence, and then you can make whatever argument you want to make about it. The only point I'm trying to make is that in the administrative proceeding, that ability is there for an applicant. Yes, Your Honor. And here, what we have is an absence of evidence. Between the period of time when Ms. Leskowiak alleged she became disabled, January 10, 2013, through the end of the insured period, the end of 2017, December 31, 2017, there's an possibility of her back impairment. And that's what you find in the ALJ's discussion. ALJ Pearson talks about this at step two. Step two of the five-step sequential evaluation process is where an ALJ determines if a claimant has severe impairments. And that's a term of art under the agency's regulations. An impairment must impact work abilities. The ALJ scoured the record here and pointed to the absence of any significant findings. There were significant findings, as Your Honor saw, in 2018, coming 10 to 11 months after the expiration of Ms. Leskowiak's insured status. For example, in November 2018, she had a surgery. But Your Honor's point is key. Here, there is no connection between that November 2018 surgery, after which she also reported improvement. That is around page 1041 of the transcript. That's, again, outside of the period of issue. But during this five-year period of issue, there's really no showing of any severe impairment, let alone the back impairment, which is what Ms. Leskowiak is focusing on here in her appeal. Her appeal to this court focuses entirely on the severity of her back impairment. And in that respect, the ALJ was reasonable. Sitting here making arguments, positing on what could have been in the evidence, is something we could all do. Those of us who are not doctors, we could think about what could have been. But what was there and what the ALJ discussed and considered was reasonable. There are simply no grounds for this court to send this case back to the agency for further consideration. The decision here was complete. It explained the grounds for the ALJ's decision at step two, alternative findings throughout the next steps of the sequential evaluation process. And here, we ask that this court affirm the ALJ's decision. Unless Your Honors have any specific questions about the ALJ's decisions or the evidence, we rest on our brief. Thank you. Thank you. Mr. Forbes, you had a little time left. I think the record is, it's indisputed that the connection is made. That the orthopedic surgeons in the 2018 surgery and a few others make the connection. The evidence is firm that post-laminectomy syndrome connects. You know what question I'm going to ask you. Yep, and I'm probably going to talk about it right now. What evidence? What evidence? Whatever. Well, it's cited in my brief, in my argument. I'm positive. I don't have it in front of me right now. But, so the next question though, is to what extent is her pain limiting during that period? And then the next question is, is her testimony about that pain consistent with this idea of post-laminectomy syndrome? And what I'm arguing is that as of 2016, 8-2016, when her family doctor refers her to an orthopedic surgeon, why did the family doctor do that? And all I can argue from inference is that it was chronic midline low back pain. That's where the instrumentation is. That's why she needs to send her to the surgeon as opposed to another specialist. I mean, she could have sent them to a pain specialist. She sent her, she sent the claimant to a surgeon. So the next question is, how do you connect it from 2016, 2017, to 2018? And she was taking pain meds and she testified. All right, Mr. Forbes, your time has expired. You'll have to wrap up. Since I'm last, may I answer the question about whether there's more evidence available? That's what I thought you had just done. No, I meant in general in these administrative proceedings. If you would please wrap up and answer the question directly. Yes. Administrative law judges are on their duty to produce a full and fair record and they can ask for more. Sometimes there is no more as far as medical record. That's what complete means. All right, thank you very much. Our thanks to both counsel. We'll take the case under advisement and that concludes today's calendar. The court is in recess.